UNITED STATES DISTRICT COURT
SOUTHERN DISTIRCT OF NEW YORK

------------------------------------------------------------------- X

PETER LEVENSON,

                                    Plaintiffs,

                 -against-

THE CITY OF NEW YORK, a municipal entity, POLICE
OFFICER EFRAIN MORALES, Shield # 23427, NEW
YORK CITY SUPERVISING POLICE OFFICER "JOHN
DOE 'Just Take Somebody and Put Them In Cuffs,'" and
POLICE OFFICERS "JOHN DOES 1-10" (names and
number of whom are unknown at present), and other
unidentified members of the New York City Police
Department,

                                   Defendants.

------------------------------------------------------------------- X

**INDEX NO.:**

**ECF CASE**

**COMPLAINT**
**[JURY TRIAL DEMANDED]**

Plaintiff PETER LEVENSON, by his attorneys, ELLIOT DOLBY-SHIELDS, Esq. and SAMUEL B. COHEN, Esq., complaining of the defendants, respectfully allege as follows:

## I.    <u>PRELIMINARY STATEMENT</u>

1.  Plaintiff PETER LEVENSON brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights, as said rights are secured by said statutes, the Constitutions of the State of New York and the United States, and the common law and the laws of the State of New York.

2.  On December 4, 2014, Plaintiff PETER LEVENSON was present in the vicinity of the intersection of 7th Avenue and 43rd Street in Times Square to

participate in a peaceful demonstration by activists associated with the Black Lives Matter movement ("Black Lives Matter," "BLM"), and to observe and document the New York Police Department ("NYPD")'s response to said demonstration.

3. Following a dispute between an unknown woman and police, Defendant NEW YORK CITY SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs,'" directed officers under his command to "just take somebody and put them in cuffs."  Thereafter, one or more of the NYPD officers present issued an order for demonstrators in the same area as Plaintiff PETER LEVENSON to disperse. However, NYPD officers did not provide a path for dispersal, preventing Plaintiff PETER LEVENSON from complying with NYPD orders. Defendant POLICE OFFICER EFRAIN MORALES then suddenly grabbed Plaintiff PETER LEVENSON, and with the assistance of two other Defendant "JOHN DOE" POLICE OFFICERS arrested Plaintiff PETER LEVENSON and applied a set of plastic flex-cuffs to his wrists.

4. Defendant POLICE OFFICER EFRAIN MORALES ("Defendant OFFICER MORALES") arrested Plaintiff PETER LEVENSON and swore out a criminal complaint against Plaintiff PETER LEVENSON that falsely alleged two charges of Disorderly Conduct, for allegedly blocking traffic in an area closed off from traffic by police, and for allegedly refusing an order to disperse when no path for dispersal was available.  These charges have since been dismissed and sealed.

5. Now, Plaintiff PETER LEVENSON brings this suit in a quest for answers as to why—despite the fact that he was at all times compliant with the law and individual Defendants' orders to the best of his capacity—New York Police Officers

sworn to serve and protect him instead harassed him and arrested him, seemingly due solely to his participation in a Black Lives Matter event and his video recording of said event and the NYPD's reaction to the event.

## II.    JURISDICTION

6.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

7. Plaintiff PETER LEVENSON further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III.    VENUE

8.  Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b) and (c) and § 1402(b) because the claims arose in this district.

## IV.    JURY DEMAND

9.   Plaintiff PETER LEVENSON respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V.    THE PARTIES

10. Plaintiff PETER LEVENSON is a citizen of the United States and a resident of the County of Bergen, Township of Englewood, State of New Jersey.

11. Defendant CITY OF NEW YORK was and is a municipal entity created and authorized under the laws of the State of New York.

12. Defendant CITY OF NEW YORK maintains the New York Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

13. At all times, Defendant POLICE OFFICER EFRAIN MORALES, Shield # 23427, was a duly sworn police officer of the NYPD and was acting under the supervision of the NYPD and according to his official duties. Plaintiff asserts his claim against Defendant POLICE OFFICER EFRAIN MORALES in both his official and individual capacities.

14. At all times, Defendant NEW YORK CITY SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs'" was a duly sworn police officer of the NYPD and was acting under the supervision of the NYPD and according to his official duties. Plaintiff asserts his claim against Defendant NEW YORK CITY SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs'" in both his official and individual capacities. This "white shirt" officer was recorded on video instructing other lower-ranking defendant NYPD officers to "Just take somebody and put them in cuffs." A photograph of this individual officer is attached hereto as Exhibit A.

15. Defendants "John Does 1–10" were those officers who were part of the group of members of service of the NYPD that assisted Defendant POLICE OFFICER EFRAIN MORALES in the detainment and arrest of Plaintiff.

16. At all times herein, Defendant POLICE OFFICER EFRAIN MORALES, Shield # 23427, Defendant NEW YORK CITY SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs,'" and Defendant POLICE OFFICERS "JOHN DOES 1-10" (Collectively, "Defendant POLICE OFFICERS," individually, "Defendant POLICE OFFICER"), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties. Plaintiff asserts his claims against each officer in both their official and individual capacities.

17. At all times relevant herein, the Defendant POLICE OFFICERS either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the course and scope of their duties and functions as agents, servants, employees and officers of the Defendant CITY OF NEW YORK.

19. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant CITY OF NEW YORK.

20. Plaintiff in furtherance of his causes of action brought pursuant to New York State law filed a timely Notice of Claim against the CITY OF NEW YORK, in compliance with the Municipal Law Section 50.

21. More than thirty (30) days have elapsed since service of said Notice of Claim was filed and THE CITY OF NEW YORK has failed to pay or adjust the claim.

## VI.   STATEMENT OF FACTS

22. Plaintiff PETER LEVENSON is a 60-year-old businessman, husband and father.

23. On the evening of December 4, 2014, Plaintiff PETER LEVENSON went to Times Square to participate in a Black Lives Matter protest occurring there.

24. On the evening of December 4, 2014, Plaintiff PETER LEVENSON went to Times Square to observe and document police interactions in a Black Lives Matter protest occurring there.

25. On the evening of December 4, 2014, at or around 9:00 PM, Plaintiff PETER LEVENSON was present near the intersection of 7th Avenue and 43rd Street in Times Square, New York, New York.

26. Plaintiff PETER LEVENSON photographed and videotaped the demonstration and the NYPD's interaction with the peaceful demonstrators.

27. In doing so, Plaintiff PETER LEVENSON was acting as a citizen photojournalist.

28. On information and belief, due to the ubiquity of recording technology and the regular documented recurrence of police violence and improper exercises of authority, many individuals who attend protest activities do so with the intention of both

participating in expressive speech activities and, if necessary, documenting police responses to said expressive speech activities as citizen journalists.

29. Plaintiff PETER LEVENSON had been participating in, observing and documenting the demonstration for approximately one hour before the events giving rise to the incident in question began.

30. When Plaintiff PETER LEVENSON arrived at Times Square, he observed metal barricades on or around the perimeter of the pedestrian island in the center of Times Square.

31. When Plaintiff PETER LEVENSON arrived at Times Square, he observed the police standing shoulder-to-shoulder, forming a wall of officers, preventing the protesters from proceeding from the barricade-encircled pedestrian island in the middle of Times Square.

32. While Plaintiff PETER LEVENSON was present in Times Square, Defendant POLICE OFFICERS closed off the streets to vehicular traffic.

33. After he arrived in Times Square, Plaintiff PETER LEVENSON observed at least one instance of police officers pushing, grabbing, and arresting a Black Lives Matter protester in an unreasonably aggressive manner without apparent cause or justification.

34. At or around that time, Plaintiff PETER LEVENSON moved towards the incident in progress, while remaining a safe distance away, to photograph and video record the police action from a different perspective.

35. At or around that time, Plaintiff PETER LEVENSON moved into the closed street to photograph and video record the incident in progress.

36. At or around that time, the NYPD issued an order for the protesters to leave the street and move to the sidewalk.

37. Because the street in question was closed to vehicular traffic by the Defendant POLICE OFFICERS, Plaintiff contends that this order was not supported by a lawful purpose.

38. Plaintiff PETER LEVENSON was prevented from moving onto the sidewalk by NYPD metal barricades and a wall of NYPD officers.

39. Plaintiff PETER LEVENSON was unable to comply with the police order to disperse due to the actions of the Defendant POLICE OFFICERS in blocking off all avenues of potential dispersal.

40. Shortly thereafter, Defendant NEW YORK CITY SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs'" instructed Defendant OFFICER MORALES and other Defendant POLICE OFFICERS to "just take somebody and put them in cuffs."

41. Immediately thereafter, Defendant OFFICER MORALES approached Plaintiff PETER LEVENSON and ordered him to stop recording and put his phone away.

42. Plaintiff PETER LEVENSON complied with the Defendant OFFICER MORALES' orders and put his cell phone into his pocket.

43. After he put his phone in his pocket, two additional Defendant POLICE OFFICERS grabbed Plaintiff PETER LEVENSON, and Defendant OFFICER MORALES informed him that he was under arrest.

44. The two Defendant "JOHN DOE" POLICE OFFICERS then pulled Plaintiff PETER LEVENSON's arms behind his back in an aggressive manner, and

Defendant OFFICER MORALES fastened a set of plastic flexcuff handcuffs tightly around Plaintiff PETER LEVENSON's wrists.

45. Plaintiff PETER LEVENSON has suffered significant back and shoulder problems requiring surgery, leaving him with a diminished range of motion and heightened sensitivity to applications of force.

46. The force used in pulling Plaintiff PETER LEVENSON's arms behind his back resulted in injuries to the plaintiff.

47. These injuries include pain, bruising and swelling to Plaintiff PETER LEVENSON's shoulders, and exacerbation of preexisting shoulder injuries.

48. These injuries also include pain, bruising and swelling to Plaintiff PETER LEVENSON's back, and exacerbation of preexisting back injuries.

49. At or around that time, one or more Defendant NYPD Officers searched Plaintiff PETER LEVENSON by patting him over all areas of his body and reaching their hands inside of his pockets.

50. Upon information and belief, Plaintiff PETER LEVENSON was arrested in retaliation for recording, observing and/or participating in the Black Lives Matter demonstrations and the NYPD's response to the Black Lives Matter demonstrations.

51. Upon information and belief, Plaintiff PETER LEVENSON was arrested in retaliation against the Black Lives Matter demonstrators, in an attempt to chill and intimidate the Black Lives Matter demonstrators and to deter them from continuing demonstrations.

52. After he was arrested and placed in flexcuffs, Defendant OFFICER MORALES escorted Plaintiff PETER LEVENSON to an area near the Times Square NYPD Station to wait for an NYPD vehicle to transport Plaintiff PETER LEVENSON and the other arrested protesters to, upon information and belief, Manhattan Central Booking.

53. Plaintiff PETER LEVENSON was forced to stand and wait outside in the cold for over one hour before the NYPD vehicle arrived that would eventually transport Plaintiff PETER LEVENSON and other arrestees to, upon information and belief, Manhattan Central Booking.

54. Defendant OFFICER MORALES stood with Plaintiff PETER LEVENSON while they awaited the NYPD vehicle.

55. While they were waiting, Defendant OFFICER MORALES confided in Plaintiff PETER LEVENSON that, "I don't even want to be here," and that he did not want to arrest Plaintiff PETER LEVENSON, but that "they make us do it," and that his supervising officer "pointed to you and told me to put the cuffs on you."

56. Upon information and belief, Defendant OFFICER MORALES did not want to arrest Plaintiff PETER LEVENSON because he knew he did not have reasonable cause to believe that Plaintiff PETER LEVENSON had committed or was committing a crime.

57. Nevertheless, Defendant OFFICER MORALES swore out a criminal complaint against Plaintiff PETER LEVENSON that falsely alleged two charges of Disorderly Conduct, for allegedly blocking traffic in an area closed off from traffic by

police, and for allegedly refusing an order to disperse when no path for dispersal was available. These charges have since been dismissed and sealed.

58. Notably, prior to this incident Defendant OFFICER MORALES was named as the defendant and found guilty by a Bronx Jury in a civil lawsuit where he was accused of using excessive force and lying under oath regarding the circumstances of the force used against the plaintiff in that case.[1]

59. At no time did Plaintiff PETER LEVENSON block either vehicular or pedestrian traffic.

60. At no time did Plaintiff PETER LEVENSON block vehicular or pedestrian traffic of his own volition—instead, any blocking of vehicular or pedestrian traffic occurred solely as a result of the acts of the Defendant POLICE OFFICERS in closing the street to vehicular traffic, erecting metal barricades and forming a human wall that confined the protesters to an area located in the street and prevented them from moving out of the street onto the sidewalk.

61. After he was arrested and placed in handcuffs, Plaintiff PETER LEVENSON was forced to stand outside in the cold for over an hour.

62. After approximately an hour and a half, one or more Defendant POLICE OFFICERS placed Plaintiff PETER LEVENSON in a nearby police vehicle.

63. The Defendant POLICE OFFICERS then transported Plaintiff PETER LEVENSON to, upon information and belief, One Police Plaza.

---

[1] *See* Rocco Parascandola, *EXCLUSIVE: Bronx jury awards $3M to man who was beaten by cops in stationhouse bathroom in 2007,* N.Y. Daily News (August 1, 2014, 2:30 AM), http://www.nydailynews.com/new-york/bronx/jury-awards-3m-man-beaten-cops-2007-article-1.1887829. Incorporated by reference herein.

64. There the Defendant POLICE OFFICERS detained Plaintiff PETER LEVENSON for approximately 11 hours, until he was released at approximately 9:00 AM.

65. Plaintiff PETER LEVENSON suffers from a seizure-like condition that causes severely painful facial nerve spasms if he does not take his prescription medication three times per day.

66. After he was placed in a holding cell with other arrestees, Plaintiff PETER LEVENSON informed numerous Defendant POLICE OFFICERS that he needed to take his prescription medication or he would have a "seizure."

67. In response to Plaintiff PETER LEVENSON informing numerous Defendant POLICE OFFICERS that he needed to take his prescription medication or he would have a "seizure," a Defendant POLICE OFFICER informed Plaintiff PETER LEVENSON that if he wanted his medication or other medical treatment, Defendants would have to transport Plaintiff PETER LEVENSON to a hospital to see a doctor, and then bring him back to Manhattan Central Booking before he could be released from police custody.

68. The Defendant POLICE OFFICERS constructively denied needed medical treatment to Plaintiff PETER LEVENSON by threatening Plaintiff PETER LEVENSON with extended pre-arraignment incarceration as a condition of receiving needed medical treatment, which constituted deliberate disregard towards Plaintiff PETER LEVENSON's serious medical needs and the substantial risk of serious harm he faced.

69. Plaintiff PETER LEVENSON was not provided with an opportunity to take his medication or otherwise receive medical attention.

70. As a result of being arrested and detained, Plaintiff PETER LEVENSON was unable to take his prescription medication, and while he was in custody he suffered an episode of severely painful facial nerve spasms.

71. The Defendants charged Plaintiff PETER LEVENSON with two counts of Disorderly conduct—PL 240.20(5) and PL 240.20(6).

72. The Defendants issued Plaintiff PETER LEVENSON a Desk Appearance Ticket with a return date of February 17, 2015.

73. Plaintiff PETER LEVENSON appeared before the Court on approximately three (3) occasions following the Defendant POLICE OFFICER'S December 4, 2014 arrest.

74. Plaintiff PETER LEVENSON received an Adjournment in Contemplation of Dismissal in resolution of the violation charges against him.

75. The violation charges against Plaintiff PETER LEVENSON have since been dismissed and sealed.

76. As a result of the foregoing, Plaintiff PETER LEVENSON sustained, *inter alia*, mental injuries, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights.

77. As a result of the foregoing, Plaintiff PETER LEVENSON demands a judgment from Defendants in a sum of money to be determined at trial.

**PLAINTIFF PETER LEVENSON WAS FALSELY ARRESTED PURSUANT TO THE UNCONSTITUTIONAL POLICIES, PRACTICES AND CUSTOMS OF THE DEFENDANT CITY OF NEW YORK AND THE NYPD**

78. In recent years, the NYPD has followed an apparent custom, policy or practice of allowing public protest activities to proceed for a time, then arbitrarily surrounding and enclosing individuals engaged in public protest activities with large numbers of NYPD officers and issuing orders to disperse without providing avenues for individuals to comply with said orders. This apparent custom, policy or practice has resulted in dozens of unfounded criminal prosecutions and at least tens of million of dollars in civil judgments against the City of New York.[2]

79. This apparent custom, policy or practice was a cause of the Plaintiff's arrest.

80. In recent years, the NYPD has followed an apparent custom, policy or practice of targeting both professional and citizen journalists for arrest at times when said journalists are recording or otherwise documenting police interactions with civilians, in

---

[2] *See, e.g., Dinler et al. v. City of New York et al.*, SDNY 04cv7922 (RJS) (Summary Judgment granted against Defendants for mass false arrest of 2004 RNC protesters who were ordered to disperse and not given opportunity to disperse.); *Peat et al. v. City of New York*, SDNY 12cv8320 (SAS) (14 individuals stopped and enclosed arbitrarily by police during peaceful march ordered to disperse, no avenue of dispersal provided, arrested for disorderly conduct, all charges declined for prosecution. Case resolved in Rule 68 offers of judgment to all Plaintiffs and payment of $333k in attorneys' fees by Defendant City of New York); *Dierken et al v. City of New York et al.*, SDNY 12cv7462(RWS) (7 individuals stopped and enclosed arbitrarily by police during peaceful march allegedly ordered to disperse, no avenue of dispersal provided, arrested for disorderly conduct, all charges dismissed.  Case resolved by Rule 68 offers of judgment to all mass arrest Plaintiffs and payment of $100k+ in attorneys' fees by Defendant City of New York.); Daniel Beekman and Erin Durkin, *City pays $18 million to settle lawsuits stemming from 2004 Republican National Convention at Madison Square Garden,* NEW YORK DAILY NEWS (Jan. 15, 2014), http://www.newsweek.com/understanding-data-lawsuits-new-york-police-department-392729. The article is incorporated herein by reference.

protest and other situations. This apparent custom, policy or practice has resulted in numerous unfounded criminal prosecutions and significant liability for the City of New York.[3]

81. This apparent custom, policy or practice was a cause of the Plaintiff's arrest.

82. In recent years, the NYPD has followed an apparent custom, policy or practice of targeting, brutalizing and falsely arresting peaceful protesters, particularly those, such as Black Lives Matter protesters, who are critical of the NYPD.

83. This apparent custom, policy or practice was a cause of the Plaintiff's arrest.

84. The NYPD's custom, policy, or practice of unlawfully targeting, brutalizing and falsely arresting peaceful protesters appears to flow from a patently unconstitutional premise: that engaging in peaceful assembly and petitioning government

---

[3] *See, e.g.*, Winnie Hu, *New York Police Officer Is Convicted of Lying About Photographer's Arrest*, N.Y. TIMES (Oct. 15, 2015), *available at* http://www.nytimes.com/2015/10/16/nyregion/new-york-police-officer-is-convicted-of-lying-about-photographers-arrest.html?_r=0 (describing felony conviction of NYPD Officer who swore to false and unfounded charges against press photographer Robert Stolarik to justify arrest and use of force against same); Anna Merlan, *City Will Pay $55,000 To Settle Case Of Occupy Livestreamer Josh Boss, Tackled By High-Ranking Nypd Chief*, VILLAGE VOICE, (Apr. 24, 2014), *available at* http://www.villagevoice.com/news/city-will-pay-55-000-to-settle-case-of-occupy-livestreamer-josh-boss-tackled-by-high-ranking-nypd-chief-6675429 (coverage and multiple videos of NYPD Chief Thomas Purtell physically tackling and seizing videographer at peaceful march, subordinate officer cheering "Kick His Ass, Tom!" as Purtell strikes Boss without apparent justification); *see, e.g.*, Nikko Koppel, *When Photographs Become Evidence*, N.Y. TIMES, (Nov. 5, 2015) ("Indeed, on Thee Rant, a message board described as 'New York City cops speaking their minds,' one commenter, dominop, responded to a post about Officer Ackermann's conviction: 'Lock up everyone in or connected with the press that you can, every chance you get! Know your enemy!'"). Articles cited above incorporated by reference herein.

for redress of grievances through public demonstration is an invitation for harassment by law enforcement.

85. Black Lives Matter is a movement of individuals and ideas that seek, *inter alia*, to call attention to and change inequalities and ill effects created through systems of structural racism in American society, including, but not limited to, police brutality against African Americans, which prevent a vast majority of individuals from enjoying the rights, liberties, and freedoms guaranteed to them by the United States Constitution.

86. The Black Lives Matter movement was formed in the wake of the July 2013 acquittal of George Zimmerman in the shooting death of Trayvon Martin, and gained widespread national support following the deaths of Michael Brown and Eric Garner, both unarmed African Americans killed by police officers July and August 2014.

87. Black Lives Matter demonstrations have been the subject of intense police scrutiny and surveillance in New York. While the MTA has released copious records of their surveillance of Black Lives Matter demonstrations in response to FOIL requests, the NYPD has declined to respond to substantially identical FOIL requests.

88. On information and belief, founded on review of materials and intraagency communications released by the MTA in compliance with FOIL, the NYPD and Defendant CITY OF NEW YORK maintain surveillance of lawful Black Lives Matter protests and protest figures in violation of the *Handschu* consent decree.

89. On information and belief, founded on review of materials and intraagency communications released by the MTA in compliance with FOIL, the NYPD and Defendant CITY OF NEW YORK maintain surveillance of lawful Black Lives

Matter protests and protest figures in violation of the *Handschu Guidelines*, as outlined in the NYPD Patrol Guide Section 217-72 and Appendix A thereto.[4]

90. In recent years, the NYPD has followed an apparent custom, policy or practice of arresting individuals, including Plaintiff PETER LEVENSON, engaged in expressive speech activity in the absence of actual criminal conduct, in violation of each individual's right to protest under the First Amendment and the Fourth Amendment's prohibition against unlawful searches and seizures.

91. Despite the fact that the City of New York is constantly alive with citizens exercising their right to protest, the City of New York has continually failed to appropriately police the many non-violent and lawful expressions of speech, resulting in the continual breach of individual rights, the waste of judicial and civic resources, and the need for appropriate training policies, methodologies, and systems to address individuals conducting peaceful and legal expressive speech as protected under the First Amendment.

92. The NYPD's officer training for protest activities provides inadequate constitutional guidance, and the NYPD's officer training fails to address or explain the First Amendment rights of participants in peaceful protest activities. Instead, the NYPD's

---

[4] The *Handschu Guidelines*, as amended, limit the investigation of political activity to those circumstances not based solely on activities protected by the First Amendment, but which include either specific information of criminal activity, or call for criminal acts of violence. Specifically, after the September 11, 2001 terrorist attacks, the *Handschu Guidelines* were modified to give the NYPD greater leeway to investigate terrorism; however, *Handschu Guidelines* still prohibit the NYPD from investigating political activities in the absence of credible evidence that those activities call for criminal acts, specifically acts of violent terrorism. The *Handschu Guidelines*, as amended, are incorporated by reference herein.

officer training for protest activities focuses on training officers in various marching formations.

93. The improper and unlawful polices and practices of the NYPD towards Black Lives Matter protesters are a continuation of the improper and unlawful policies and practices of the NYPD towards Occupy Wall Street protesters in 2011 and 2012, which subjected the City of New York to dozens of lawsuits by Occupy Wall Street protesters. Additionally, the NYPD and the City of New York were the recipient of extensive public condemnation for their policies and practices towards Occupy Wall Street, resulting in international human rights and U.S. civil liberties experts working together and creating the *Protest and Assembly Project*, which in turn released the comprehensive report entitled *Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street on July 21, 2012*.[5] The Suppressing Protest Report documented numerous violations by the NYPD, such as arbitrary and selective rule enforcement, baseless arrests, unjustified closures of public space, and unfounded dispersals of peaceful assemblies.[6]

94. Despite international condemnation for their policies and practices towards Occupy Wall Street in 2011 and 2012, the NYPD and the Defendant City of New York failed to rectify the defective and unlawful polices, customs, and practices of the NYPD, which has led to the arrests of numerous Black Lives Matter protesters engaged in lawful expressive speech activity.

---

[5] The Global Justice Clinic (NYU School of Law), Walter Lestner Int'l Human Rights Clinic (Fordham Law School), *Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street* (July 21, 2012). Incorporated by reference herein, and hereafter referred to as the "Suppressing Protest Report."
[6] Suppressing Protest Report at vi.

95. Further, just as the majority of Occupy Wall Street arrests in 2011 and 2012 resulted in dismissals, adjournments in contemplation of dismissal ("ACDs"), and declined prosecutions, the majority of Black Lives Matter arrests in 2014 and 2015 also resulted in dismissals, ACDs, and declined prosecutions.

96. Since the inception of the Black Lives Matter movement, the NYPD has continually arrested, used excessive force, and retaliated against Black Lives Matter protesters for engaging in expressive speech activity.

97. The first large Black Lives Matter Protest in New York City occurred on August 14, 2014, when demonstrators marched north from Union Square up 7th Avenue and Broadway to Times Square, where the protesters were blocked from proceeding any further by the NYPD, who had set up barricades that formed choke points of ingress and egress. The Atlantic News Wire reported that during the August 14, 2014 Black Lives Matter demonstration in Times Square, the NYPD "arrest[ed] people for no reason, [and] push[ed] reporters out of the way."[7]

98. Thereafter, on November 26, 2014, in response to the failure of the Ferguson, Missouri District Attorney to secure an indictment of Darren Wilson, the white police officer who shot and killed Michael Brown, hundreds of Black Lives Matter protesters peacefully demonstrated in New York City, marching from Union Square to Times Square. Upon information and belief, approximately ten (10) peaceful protesters were arrested, which, upon information and belief, resulted in approximately ten (10) dismissals, ACDs, or declined prosecutions.

---

[7] Polly Mosenda, *Michael Brown Protests Spread to Times Square*, THE WIRE (Aug. 14, 2014 11:03PM ET),
 http://www.thewire.com/national/2014/08/michael-brown-protests-spread-to-times-square/376125/. Incorporated by reference herein.

99. On December 3, 2014, the Black Lives Matter movement engaged in expressive protest activity across New York City to demonstrate in response to the failure of the Staten Island District Attorney to secure an indictment of NYPD officer Daniel Pantaleo, the police officer who choked and killed Eric Garner on July 17, 2014.

100.    Several days before the Staten Island District Attorney announced that he had failed to indict NYPD Officer Daniel Pantaleo, New York City Police Commissioner William Bratton announced that the NYPD had been anticipating and preparing for the protests for months.[8] Thereafter, on December 3, 2014, New York City Police Commissioner stated that, "[w]e have had quite a bit of time to prepare for the events that will unfold here for the next few days."[9]

101.    Moreover, on December 3, 2014, New York City Mayor Bill de Blasio condoned the peaceful Black Lives Matter demonstrations that took place that day, and encouraged demonstrators to engage in further peaceful protest activity in New York City. Mayor de Blasio stated that, "[w]e are dealing with centuries of racism that has brought us to this day ... That is how profound the crisis is." Mayor de Blasio added that, "[a]nyone who believes in the values of this country should feel called to action right now."[10]

---

[8] Brynn Gingras, Checkey Beckford, Jonathan Dienst and Jonathan Vigliotti, *Thousands of Garner Protesters March Across NYC*, NBC New York (Dec. 4, 2014 6:12 AM), http://www.nbcnewyork.com/news/local/New-York-City-Eric-Garner-Protests-Rockefeller-Center-Times-Square-Arrests-NYPD-284722861.html. Incorporated by reference herein.

[9] Marc Santora, *Bratton at a Press Conference Earlier*, N.Y. TIMES (Dec. 3, 2014 2:31 PM), http://cityroom.blogs.nytimes.com/2014/12/03/the-death-of-eric-garner-the-grand-jury-decision/?_r=0. Incorporated by reference herein.

[10] Andy Newman, *Reaction to Eric Garner Grand Jury Decision*, N.Y. TIMES (Dec. 3, 2014 2:22 PM), http://cityroom.blogs.nytimes.com/2014/12/03/the-death-of-eric-garner-the-grand-jury-decision/?_r=0. Incorporated by reference herein.

102.    The following day, December 4, 2014, the City of New York knew that a large number of peaceful protesters would gather in Union Square in Manhattan and march north to Times Square, and instructed its officers to anticipate acts of civil disobedience. Instead of learning from the numerous mass arrests of Occupy Wall Street protesters in 2011 and 2012, which led to numerous lawsuits against the City of New York and NYPD officers, and despite months of preparation, the NYPD arrested over two hundred (200) peaceful protesters at the December 4, 2014 Black Lives Matter demonstration in Times Square—including Plaintiff PETER LEVENSON—which, upon information and belief, resulted in approximately two hundred (200) dismissals, ACDs, or declined prosecutions.

103.    Thereafter, at an April 7, 2015 Black Lives Matter demonstration on Flatbush Avenue in Brooklyn, New York, approximately forty two (42) peaceful protesters were arrested, which, upon information and belief, resulted in approximately forty two (42) dismissals, ACDs, or declined prosecutions. Moreover, upon information and belief, NYPD officers assaulted and seriously injured at least four Black Lives Matter Protesters at the April 7, 2015 demonstration, including Elsa Waithe, who suffered broken ribs after an NYPD officer violently shoved her onto the ground and the metal railing of a tree, in response to Ms. Waithe video recording another protester's arrest.[11]

---

[11] Stepansky, Joseph, *NYPD probing video purportedly showing an anti-police brutality protester being violently shoved by cop,* THE N.Y. DAILY NEWS (Apr. 16, 2015, 12:12 AM), http://www.nydailynews.com/new-york/nyc-crime/nypd-probing-video-reportedly-showing-shoving-protestor-article-1.2187179.  Incorporated by reference herein.

104.    Despite the numerous confrontations and resulting arrests, upon information and belief, most of the arrests culminated in dismissals, ACDs, or declined prosecutions.

105.    In recent years, the NYPD has also followed an apparent custom, policy or practice of inappropriately monitoring and targeting peaceful Black Lives Matter protesters and employing extraordinary police enforcement tactics against Black Lives Matter protesters, and justifying the use of such inappropriate tactics by conflating peaceful protesters with violent terrorists.

106.    Specifically, in January 2015, NYPD Commissioner William Bratton announced that the NYPD was creating a new heavily armed unit—the Strategic Response Group—which is "designed for dealing with events like our recent [Black Lives Matter] protests, or incidents [of violent terrorist attacks] like Mumbai or what just happened in Paris." Bratton added that, "They'll be equipped with all the extra heavy protective gear, with the long rifles and machine guns—unfortunately sometimes necessary in these instances."[12]

107.    Shortly thereafter, in February 2015, at a New York state Senate hearing on protests against police brutality, NYPD Commissioner William Bratton asked lawmakers to elevate the crime of resisting arrest from a misdemeanor to a felony.[13] Arrestees going limp and forcing officers to carry them off to jail was a common tactic of

---

[12] *Commissioner Bratton Unveils Plans For New High-Tech Anti-Terror Police Unit,* CBS NEW YORK (Jan. 29, 2015 5:51 PM), http://newyork.cbslocal.com/2015/01/29/bratton-unveils-plans-for-new-anti-terror-police-unit/. Incorporated by reference.

[13] *NYPD's Top Cop Wants To Make It A Felony to Resist Arrest*, NPR (Feb. 10, 2015 1:39 PM), http://www.npr.org/sections/codeswitch/2015/02/10/384990293/nypds-top-cop-wants-to-make-it-a-felony-to-resist-arrest. Incorporated by reference.

the civil rights movement in the 1960s—and has been used by Black Lives Matter protesters in NYC and around the country—and is considered resisting arrest by the NYPD and other law enforcement agencies.

108.    The NYPD has a long history of engaging in unlawful profiling and targeting groups of citizens. As recently stated by the Third Circuit Court of Appeals with regard to the NYPD's practice of employing undercover and counterterrorism officers to spy on Muslim citizens in and around New York City,

> What occurs here in one guise is not new. We have been down similar roads before. Jewish-Americans during the Red Scare, African-Americans during the Civil Rights Movement, and Japanese-Americans during World War II are examples that readily spring to mind. We are left to wonder why we cannot see with foresight what we see so clearly with hindsight— that "[l]oyalty is a matter of the heart and mind[,] not race, creed, or color."[14]

109.    Plaintiff PETER LEVENSON's individual account is illustrative of the numerous arbitrary arrests condoned on the night of December 4, 2014, where police officers allowed the public protest activities to proceed for a time, then arbitrarily surrounded and enclosed hundreds of individuals engaged in public protest activities with large numbers of NYPD officers, issued orders to disperse without providing avenues for individuals to comply with said orders, then arbitrarily arresting individuals without witnessing actual criminal conduct or having probable cause.

110.    There were no warrants for Plaintiff PETER LEVENSON's arrest, and he was attempting to exercise his First Amendment rights at the time of his arrest.

---

[14] *Hassan v. City of New York*, No. 14-1688 (3d Cir. Oct. 13, 2015), *quoting Ex parte Mitsuye Endo*, 323 U.S. 283, 302 (1944).

111.   These violations of Plaintiff PETER LEVENSON's constitutional rights as protected by the First and Fourth Amendment occurred because the NYPD and the Defendant CITY OF NEW YORK exhibited deliberate indifference and disregard to the effect of the policies and practices of the NYPD towards protestors and photojournalists acting without criminal conduct despite the numerous lawsuits stemming from the 2004 Republican National Committee Convention and Occupy Wall Street in 2011 and 2012; the vast majority of the Occupy Wall Street arrests resulting in dismissal; the tens of millions of dollars paid by the City in settlements and judgments in civil cases arising from mass arrests of protesters and journalists at the 2004 Republican National Committee Convention and Occupy Wall Street in 2011 and 2012; and the scathing reports in the newspapers and from human rights organizations highlighting the unconstitutional policies and practices of the NYPD.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

112.   Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

113.   All of the aforementioned acts of the Defendant CITY OF NEW YORK, Defendant "John Doe" POLICE OFFICERS, Defendant OFFICER MORALES, and Defendant SUPERVISING POLICE OFFICER "JOHN DOE 'Just Take Somebody and Put Them In Cuffs'" ("Defendants" or "Defendant POLICE OFFICERS" unless otherwise described, henceforth), their agents, servants and employees, were carried out under the color of state law.

114.    All of the aforementioned acts deprived Plaintiff PETER
LEVENSON of the rights, privileges and immunities guaranteed to citizens of the United
States by the First, Fourth, and Fourteenth Amendments to the Constitution of the United
States of America, and in violation of 42 U.S.C. § 1983.

115.    The acts complained of were carried out by the aforementioned
individual defendants in their capacities as police officers with all of the actual and/or
apparent authority attendant thereto.

116.    The acts complained of were carried out by the aforementioned
individual defendants in their capacities as police officers, pursuant to the customs,
usages, practices, procedures, and the rules of the Defendant CITY OF NEW YORK and
the City of NEW YORK Police Department, all under the supervision of ranking officers
of said department.

117.    The individual Defendants and Defendant CITY OF NEW YORK,
collectively and individually, while acting under color of state law, engaged in
Constitutionally violative conduct that constituted a custom, usage, practice, procedure or
rule of the respective municipality/authority, which is forbidden by the Constitution of
the United States.

118.    As a result of the above constitutionally impermissible conduct,
Plaintiff PETER LEVENSON was caused to suffer personal injuries, violation of his civil
rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal
expenses and damage to his reputation and standing within his community.

119.    As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON was injured and harmed. Accordingly, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

120.    Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

121.    As a result of the aforesaid conduct by the Defendant POLICE OFFICERS, Plaintiff PETER LEVENSON was subjected to an illegal, improper and false arrest by the Defendant POLICE OFFICERS and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

122.    As a result of the above constitutionally impermissible conduct, Plaintiff PETER LEVENSON was caused to suffer personal injuries, physical injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

123.    As a result of City Defendants' impermissible conduct, Plaintiff PETER LEVENSON was injured and harmed. Accordingly, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**FAILURE TO INTERVENE UNDER 42 U.S.C. §1983**

124.     Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

125.     The Defendants had an affirmative duty to intervene on Plaintiff PETER LEVENSON's behalf to prevent the violation of his constitutional rights.

126.     The individual Defendants failed to intervene on Plaintiff PETER LEVENSON's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

127.     The individual Defendants failed to intervene on Plaintiff PETER LEVENSON's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff PETER LEVENSON's rights were violated by their affirmative conduct.

128.     As a result of the aforementioned conduct of the individual Defendants, Plaintiff PETER LEVENSON's constitutional rights were violated.

129.     As a result of the above constitutionally impermissible conduct, Plaintiff PETER LEVENSON was caused to suffer personal injuries, physical injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

130.    As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON was injured and harmed. Accordingly, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FALSE IMPRISONMENT AND ARREST UNDER NEW YORK STATE LAW

131.    Plaintiff PETER LEVENSON repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

132.    As a result of the aforesaid conduct by Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS, Plaintiff was unlawfully detained and confined.

133.    The Defendant POLICE OFFICERS——in performance of their duties with powers and authorities designated upon them by Defendant THE CITY OF NEW YORK——intentionally confined Plaintiff PETER LEVENSON.

134.    Plaintiff PETER LEVENSON was at all times consciously aware of his confinement by the Defendant POLICE OFFICERS.

135.    At no point throughout Plaintiff PETER LEVENSON'S unlawful detention and confinement by the Defendant POLICE OFFICERS did Plaintiff PETER LEVENSON consent to said confinement.

136.    At no point throughout Plaintiff PETER LEVENSON'S unlawful detention and confinement by the Defendant POLICE OFFICERS were the actions of the Defendant POLICE OFFICERS otherwise privileged.

137.   As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON was injured and harmed. Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**DEPRIVATION OF PLAINTIFFS' RIGHTS AS GUARANTEED BY THE NEW YORK STATE CONSTITUTION**

138.   Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

139.   As a result of the aforesaid conduct of Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS, Plaintiff PETER LEVENSON was deprived of rights guaranteed to him by the New York State Constitution, including though not limited to the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures as described in Article I §12 of the New York State Constitution.

140.   The acts complained of were carried out by the Defendant POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the NEW YORK Police Department.

141.   The Defendant POLICE OFFICERS and Defendant THE CITY OF NEW YORK, collectively and individually, while acting under color of state law

violated Plaintiff PETER LEVENSON'S constitutional rights by engaging in conduct proscribed by the New York State Constitution.

142.    As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON was injured and harmed. Accordingly, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
## UNDER 42 U.S.C. § 1983

143.    Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

144.    Plaintiff PETER LEVENSON was present as a participant in a peaceful Black Lives Matter demonstration at the time of the incident in question.

145.    Plaintiff PETER LEVENSON was present as an observer and/or photojournalist observing a peaceful Black Lives Matter demonstration, and police responses thereto, at the time of the incident in question.

146.    The Defendant POLICE OFFICERS, including but not limited to Defendant OFFICER MORALES and the Defendant "JOHN DOE" NYPD Officers stopped and arrested Plaintiff PETER LEVENSON in order to retaliate against Plaintiff PETER LEVENSON for being present as an observer and/or photojournalist documenting a Black Lives Matter event, and police responses thereto.

147.    The Defendant POLICE OFFICERS, including but not limited to Defendant OFFICER MORALES and the Defendant "JOHN DOE" NYPD Officers

stopped and arrested Plaintiff PETER LEVENSON and others in order to retaliate against Black Lives Matter demonstrators, and to chill and deter them from further First Amendment protected expression.

148.    Plaintiff PETER LEVENSON was not engaged in any illegal activity of any kind or sort when the Defendant POLICE OFFICERS stopped and arrested him.

149.    The Defendant "John Doe" POLICE OFFICERS stopped and arrested Plaintiff PETER LEVENSON in order to retaliate against him for lawfully exercising his First Amendment protected rights to free speech, expression and association.

150.    The actions of the Defendant "John Doe" POLICE OFFICERS heretofore described, were designed to and did cause severe psychological and emotional distress in direct retaliation for Plaintiff PETER LEVENSON'S exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution, as well as the Constitution of the State of New York.

151.    As a result of the forgoing, Plaintiff PETER LEVENSON is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

152.    As a result of the above constitutionally impermissible conduct, Plaintiff PETER LEVENSON was caused to suffer personal injuries, physical injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of

freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

153.    As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

154.    Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

155.    Defendants roughly seized and handcuffed Plaintiff PETER LEVENSON without probable cause for Plaintiff PETER LEVENSON's arrest.

156.    Defendants grabbed Plaintiff PETER LEVENSON, forcefully pulled him arms behind his back, and handcuffed him in an unreasonably tight manner without probable cause for Plaintiff PETER LEVENSON's arrest and in the absence of need for such action and force.

157.    Due to Plaintiff PETER LEVENSON's pre-existing medical conditions, Defendants' conduct caused him to suffer extreme pain and exacerbation of pre-existing medical conditions.

158.    The level of force employed by Defendants against Plaintiff PETER LEVENSON was objectively unreasonable.

159.    The force employed by Defendants against Plaintiff PETER LEVENSON did not advance any proper governmental objective.

160.   As a result of the aforementioned conduct, Plaintiff PETER LEVENSON suffered and sustained physical injuries.

161.   As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON demand judgment against defendants in a sum of money to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

162.   Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

163.   The Defendant CITY OF NEW YORK and the Defendant Police Officers have acted under color of law to deprive Plaintiff PETER LEVENSON of his civil, constitutional and statutory rights to due process of law pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and are liable to Plaintiff PETER LEVENSON under 42 USC §1983 and the New York State Constitution.

164.   In response to Plaintiff PETER LEVENSON informing numerous Defendant POLICE OFFICERS that he needed to take his prescription medication or he would have a "seizure," a Defendant POLICE OFFICER informed Plaintiff PETER LEVENSON that if he wanted to receive his medication or other medical treatment, Defendants would have to transport Plaintiff PETER LEVENSON to the hospital to see a doctor, and then bring him back to Manhattan Central Booking before he could be released from police custody.

165.    The Defendant POLICE OFFICERS constructively denied needed medical treatment to Plaintiff PETER LEVENSON by threatening Plaintiff PETER LEVENSON with extended pre-arraignment incarceration as a condition of receiving needed medical treatment, which constituted deliberate disregard towards Plaintiff PETER LEVENSON's serious medical needs and the substantial risk of serious harm he faced.

166.    Plaintiff PETER LEVENSON was not provided with an opportunity to take his medication or otherwise receive medical attention.

167.    Because Plaintiff PETER LEVENSON was unable to take his prescription medication, while he was in custody he suffered an episode of severely painful facial nerve spasms.

168.    Plaintiff PETER LEVENSON was damaged by the deliberate indifference of the Defendant CITY OF NEW YORK and the Defendant POLICE OFFICERS.

As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON demands judgment against defendants in a sum of money to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM**
**UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. § 1983**

169.    Plaintiff PETER LEVENSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

170.    Defendants harassed and falsely arrested Plaintiff PETER LEVENSON in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that their conduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

171.    The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

172.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of the Defendant CITY and the NYPD, all under the supervision of ranking officers of said department.

173.    The aforementioned customs, policies, usages, practices, procedures and rules of the Defendant CITY and the NYPD include, but are not limited to, the following unconstitutional customs, policies and practices:

a)  wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests);

b)  wrongfully arresting individuals without probable cause in attempts to justify excessive uses of force (i.e. "contempt of cop" "cover charge" arrests);

c)  wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., arrest quotas);

d)  wrongfully arresting individuals without probable cause after allowing

those individuals to engage in peaceful public protest activities for a time, then arbitrarily surrounding and enclosing those individuals engaged in public protest activities with large numbers of NYPD officers and issuing orders to disperse without providing avenues for individuals to comply with said orders;

e) wrongfully targeting and arresting both professional and citizen journalists without probable cause at times when said journalists are recording or otherwise documenting police interactions with civilians, in protest and other situations, to punish the journalists for documenting police interactions with civilians;

f) wrongfully arresting individuals without probable cause to punish said individuals for engaging in peaceful demonstrations calling for an end to police brutality, including but not limited to Black Lives Matter protests and demonstrations organized by similar activist groups;

g) wrongfully arresting individuals without probable cause to punish said individuals for engaging in expressive speech activity absent actual criminal conduct in violation of each individual's right to protest under the First Amendment and the Fourth Amendment's prohibition against unlawful searches and seizures;

h) inappropriately monitoring and targeting peaceful Black Lives Matter protesters and employing extraordinary police enforcement tactics against Black Lives Matter protesters, and justifying the use of such inappropriate tactics by conflating peaceful protesters with violent

terrorists.

i) Failing to provide any reasonable or meaningful training to police officers on the rights of participants in peaceful protest activities, and declining to address said failures of training even after the imposition of tens of millions of dollars in civil judgment liability.

174. As a result of the above constitutionally impermissible conduct, Plaintiff PETER LEVENSON was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

175. As a result of Defendants' impermissible conduct, Plaintiff PETER LEVENSON demands judgment against Defendants in a sum of money to be determined at trial.

**WHEREFORE and in light of the foregoing**, it is respectfully requested that the

Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the

interest of justice.


Dated: New York, New York                    Respectfully Submitted,
              November 12, 2015


                                             ELLIOT DOLBY-SHIELDS, ESQ.
                                             SAMUEL B. COHEN, ESQ.
                                             Attorneys for Plaintiff Peter Levenson


                        By: _____~//s//~_____
                             Elliot Dolby-Shields, Esq. [ED3372]
                             235 West 137th Street, No. 2F
                             New York, New York 10030
                             Ph: (585) 749-2089
                             edshieldslaw@gmail.com

                             _____~//s//~_____
                             Samuel B. Cohen, Esq. [SC0622]
                             494 8th Avenue Suite 1000
                             New York, New York 10001
                             P/F: (212) 537-5919
                             Sam@SamCohenLaw.com